[Cite as *State v. Mathes*, 2013-Ohio-4128.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2013-02-014 |
| | : | O P I N I O N |
| - vs - | | 9/23/2013 |
| | : | |
| JAMES DAVID MATHES, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNT COURT OF COMMON PLEAS
Case No. 2011CR00761

D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Paul Croushore, P.O. Box 75170, Cincinnati, Ohio 45275, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, James David Mathes, appeals a decision of the Clermont County Court of Common Pleas denying his petition for postconviction relief. For the reasons discussed below, we affirm the judgment of the trial court.

## I. FACTS

{¶ 2} In August 2011, appellant was indicted on charges of rape, unlawful restraint, kidnapping, and tampering with evidence. The charges arose out of allegations that on June

4, 2010, appellant pinned A.C., a 14-year-old neighbor girl, down on a couch in his home for three to five minutes, reached up her shorts, and digitally penetrated her vagina.

{¶ 3} A jury trial was held in February 2012. At trial, A.C. testified that on June 4, 2010, appellant grabbed her while she was in his home, pinned her down on the couch, reached up her shorts, and digitally penetrated her vagina. Emily Draper, a chemist with the Ohio Bureau of Criminal Investigation, testified she tested DNA samples taken from underneath appellant's fingernails and from his fingernail clippings. Draper explained that she found A.C.'s DNA on the samples, that the samples taken from appellant's fingernails produced more of A.C.'s DNA than appellant's own DNA, and that the amount of A.C.'s DNA found on the nail scrapings was consistent with digital penetration of the mouth, vagina, or anus.

{¶ 4} Appellant testified at trial on his own behalf, maintaining that he had no contact with A.C. Appellant suggested that A.C.'s DNA may have gotten on his fingernails when he handled some of the clothing A.C. had left at his house for his niece to borrow. The jury rejected appellant's version of events and found him guilty of rape, kidnapping, and unlawful restraint. Appellant filed a motion for new trial, which was denied by the trial court on March 2, 2012. After finding that rape, kidnapping, and unlawful restraint were allied offenses of similar import, the trial court sentenced appellant to five years in prison on the rape conviction. Appellant directly appealed his conviction in March 2012, and this court affirmed his conviction on April 29, 2013. *State v. Mathes*, 12th Dist. Clermont No. CA2012-03-028, 2013-Ohio-1732.

{¶ 5} On December 6, 2012, after the filing of his direct appeal, appellant filed a postconviction relief petition to vacate and set aside the judgment of conviction. Appellant simultaneously requested a hearing on his petition and the appointment of an expert to conduct DNA testing in accordance with R.C. 2953.71. Appellant's request for an expert and

his petition for postconviction relief were denied by the trial court without a hearing on January 16, 2013. Appellant now appeals the denial of his postconviction relief petition, raising two assignments of error.

## II. ANALYSIS

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED IN DENYING THE [APPELLANT'S] POST-CONVICTION PETITION WITHOUT A HEARING WHERE HE PROVIDED EVIDENCE OF WHICH DEFENSE COUNSEL HAD NOT BEEN AWARE SHOWING THAT THE PURPORTED VICTIM HAD APPROACHED THE [APPELLANT] A WEEK AFTER THE SUPPOSED RAPE AND THAT A.C. AND HER FATHER LIED ABOUT THE INCIDENT.

{¶ 8} In his first assignment of error, appellant argues the trial court erred in denying his petition for postconviction relief without holding a hearing as the evidence he submitted in support of his petition demonstrated that his trial counsel was unprepared to effectively cross-examine A.C. at trial. Specifically, appellant contends his trial counsel failed to adequately question and impeach A.C. on the issue of whether she voluntarily went to appellant's house on June 14, 2010, ten days after the incident allegedly occurred. Appellant contends that had his trial counsel been prepared to impeach and call into question A.C.'s veracity as to this issue, the result of the trial would have been different as "A.C.'s veracity was the key evidence in the case."

{¶ 9} At trial, appellant testified that ten days after the incident allegedly took place, A.C. came over and knocked on his door. Appellant explained that he called the Union Township Police Department "to let them know [he] was having problems" with A.C., and "the next thing [he] knows" the police, fire department, and a rescue squad responded to A.C.'s house. At trial, A.C. denied going to appellant's house on June 14, 2010. Further, both A.C.

and her father denied that the police had responded to A.C.'s house on June 14, 2010.[1]

Appellant now claims that if his trial counsel had adequately prepared to cross-examine A.C., his trial counsel would have impeached A.C.'s testimony by introducing a copy of a Union Township Police Department Incident Run report ("Incident Run report"), which details a dispatch to A.C.'s house on June 14, 2010 to treat a 10-year-old boy who had accidentally stabbed himself. Appellant contends that he was prejudiced by "[t]he failure of trial counsel to raise this issue [of A.C.'s attempt to visit on June 14, 2010] and [such] * * * evidence should [have] be[en] considered by the jury in determining [whether] the purported victim is in fact a sociopath who becomes enraged when thwarted, rather than being the victim of an assault by [appellant]."

{¶ 10} Petitions for postconviction relief are governed by R.C. 2953.21, which states, in pertinent part:

> (A)(1)(a) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.

---

1. A.C.'s father testified at trial as follows:

> Q: * * * Was there an incident approximately ten days later where the police were called out to your house?
>
> [FATHER]: Not that I'm aware of. There might have been.
>
> Q: Might have been? Something you typically remember if police come out to your house?
>
> [FATHER]: It's possible.
>
> * * *
>
> Q: Isn't it true that the police were called out to your house on June 14th because [A.C.] had gone next door and rang Mr. Mathes doorbell?
>
> [FATHER]: I don't recall that.

**{¶ 11}** A postconviction proceeding is not an appeal of a criminal conviction, but rather, is a collateral civil attack on a criminal judgment. *State v. Dillingham*, 12th Dist. Butler Nos. CA2012-02-037 and CA2012-02-042, 2012-Ohio-5841, ¶ 8; *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999). "In reviewing an appeal of postconviction relief proceedings, this court applies an abuse of discretion standard." *State v. Vore*, 12th Dist. Warren Nos. CA2012-06-049 and CA2012-10-106, 2013-Ohio-1490, ¶ 10, citing *State v. Wagers*, 12th Dist. Preble No. CA2011-08-007, 2012-Ohio-2258, ¶ 15. For this court to find an abuse of discretion, we must find more than an error of judgment; we must find that the trial court's ruling was unreasonable, arbitrary, or unconscionable. *Id.* A reviewing court will not overrule the trial court's finding on a petition for postconviction relief where the finding is supported by competent and credible evidence. *Wagers* at ¶ 15.

**{¶ 12}** Furthermore, "[a]n evidentiary hearing is not automatically guaranteed each time a defendant makes a petition for postconviction relief." *Vore* at ¶ 11. A trial court properly denies a postconviction relief petition without a hearing if the supporting affidavits, the documentary evidence, the files, and the records of the case do not demonstrate that the petitioner set forth substantial operative facts to establish substantive grounds for relief. *Calhoun* at paragraph two of the syllabus. *See also* R.C. 2953.21(C). The decision to grant or deny the petitioner an evidentiary hearing is left to the sound discretion of the trial court. *Dillingham* at ¶ 8.

**{¶ 13}** We find no error in the trial court's decision to deny appellant's postconviction relief petition without holding an evidentiary hearing. To prevail on an ineffective assistance of counsel claim, an appellant must establish that his trial counsel's performance was deficient and that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Vore* at ¶ 13, citing *State v. Myers*, 12th Dist. Fayette No. CA2005-12-035, 2007-Ohio-915, ¶ 33. Trial counsel's performance will not be deemed deficient unless it

- 5 -

"fell below an objective standard of reasonableness." *Id.*, quoting *Strickland v. Washington*, 466 U.S. 688, 688, 104 S.Ct. 2052 (1984). To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, quoting *Strickland* at 694.

{¶ 14} In the present case, appellant's claim is barred by the doctrine of res judicata, which states that "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction, or on an appeal from that judgment." *Wagers*, 2012-Ohio-2258 at ¶ 10, citing *State v. Szefcyk*, 77 Ohio St.3d 93 (1996), syllabus. "Res judicata is a proper basis for dismissing a defendant's petition for postconviction relief when the defendant, represented by new counsel on direct appeal, fails to raise therein the issue of competent trial counsel and the issue could fairly have been determined without resort to evidence outside the record." *Id.* at ¶ 11, citing *State v. Cole*, 2 Ohio St.3d 112 (1982), syllabus. However, "there is an exception to the res judicata bar when the petitioner presents competent, relevant, and material evidence outside the record *that was not in existence and available to the petitioner in time to support the direct appeal*." (Emphasis added.) *Id.* at ¶ 12, citing *State v. Lawson*, 103 Ohio App.3d 307, 315 (12th Dist.1995).

{¶ 15} Here, appellant fails to identify any reason why his trial counsel's failure to impeach A.C. with the Incident Run report could not have been raised on direct appeal. From the record, it is clear that appellant knew of the existence of the report as early as February 24, 2012, when he filed a motion for new trial and made mention of the Incident Run report. Appellant's direct appeal of his conviction did not occur until March 30, 2012. Any claim that his trial counsel was ineffective for failing to discover and use the Incident Run

report could have, and should have, been raised on direct appeal.

{¶ 16} Furthermore, appellant's claim that he was prejudiced by trial counsel's failure to use such a report to impeach A.C.'s veracity is without merit. As discussed in appellant's direct appeal, appellant's counsel spent a significant amount of time challenging A.C.'s veracity at trial. Trial counsel focused on A.C.'s inconsistent statements and he thoroughly cross-examined her about her changing statements to police. *See Mathes*, 2013-Ohio-1732, ¶ 11-12. Yet, the jury still found A.C. to be a credible witness. Given the overwhelming evidence of appellant's guilt, including A.C.'s detailed description as to the manner in which appellant assaulted her and the DNA evidence corroborating her account, appellant is unable to prove with reasonable probability that the result of the trial would have been different had his trial counsel impeached A.C.'s statement that the police had not responded to her house on June 14, 2010.

{¶ 17} Appellant's first assignment of error is, therefore, overruled.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED IN DENYING THE POST-CONVICTION PETITION WITHOUT A HEARING WHEN IT ALLEGED AND DEMONSTRATED THAT DEFENSE COUNSEL WAS INEFFECTIVE AND THAT THE TRIAL COURT HAD BEEN MADE AWARE OF THAT FACT PRIOR TO TRIAL.

{¶ 20} In his second assignment of error, appellant argues the trial court erred in denying his petition for postconviction relief without holding a hearing as the evidence he submitted in support of his petition demonstrated that his trial counsel was unprepared for trial and that the trial court judge knew counsel was not prepared. In support of his argument, appellant asserts that his sister, Brenda Wilson, called the court the day before appellant's trial began to inform the judge that appellant's counsel was unprepared and to request a continuance.

{¶ 21} As an initial matter, we note that any claim that appellant was prejudiced by his trial counsel's failure to adequately prepare for trial could have, and should have, been brought on appellant's direct appeal. His claim is therefore barred by the doctrine of res judicata. *See Wagers*, 2012-Ohio-2258 at ¶ 10.

{¶ 22} Moreover, appellant's claim that his trial counsel was unprepared for trial is not supported by affidavit, documentary evidence, or the record. Although appellant asserts in his petition that his sister had called the court to request a continuance, nothing in the record indicates that such a phone call ever took place. However, even if Wilson had called to request a continuance, there is no evidence that Wilson had the right to request a continuance on appellant's behalf or that she had any basis for her opinion that defense counsel was unprepared for trial. After carefully reviewing the record, we find no evidence or indication that appellant's trial counsel was unprepared for trial or that appellant was in any way prejudiced by his trial counsel's performance.

{¶ 23} Appellant's second assignment of error is, therefore, overruled.

### III. CONCLUSION

{¶ 24} We find that the trial court did not abuse its discretion in denying appellant's petition for postconviction relief without first holding an evidentiary hearing.

{¶ 25} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.